UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| CYPRESS/SPANISH FORT I, L.P., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:10-CV-1507-B |
| | § | |
| PROFESSIONAL SERVICE | § | |
| INDUSTRIES, INC., | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court are Defendant Professional Service Industries, Inc.'s Motion to Dismiss

(doc. 39), filed March 20, 2011, and Plaintiff Spanish/Cypress Fort I, L.P.'s Motion to Partially Strike

Defendant's Motion to Dismiss (doc. 42), filed March 25, 2011.  Having considered the Motions,

the Court hereby **DENIES** both Defendant's Motion to Dismiss and Plaintiff's Motion to Strike.

## I.

## BACKGROUND

This is a construction dispute concerning geotechnical design and testing work performed

by Defendant Professional Service Industries, Inc. ("PSI") at a 268-acre mixed-used development

project (the "Project") owned and developed by Plaintiff Cypress/Spanish Fort I, L.P. ("Plaintiff").

This development, known as the Spanish Fort Town Center, is located in Spanish Fort, Alabama.

(Pl.'s 1st Am. Compl. ¶ 1).

The relevant facts in this case begin in June 2005, when Plaintiff hired Hoar Construction

to serve as its general contractor on the Project.  (*Id.* ¶ 18).  Hoar, in turn, subcontracted with

Newell & Sons, Inc. ("Newell") to perform the Project's earthwork.  (*Id.*).  This earthwork chiefly consisted of the erection of large slopes around the perimeter of the Project by bringing in fill and then compacting the fill material, so as to raise the height of the surface upon which the Project would be built.  (*Id.* ¶¶ 17-18).  Newell's earthwork also consisted of roadway excavations, embankments, foundations, drainage, soil stabilization, and soil reinforcement. (*Id.* ¶ 18).

In July 2005, Plaintiff hired PSI to serve as its geotechnical engineer ("geotech") on the Project. (*Id.* ¶ 21).  As the project geotech, PSI was tasked with monitoring the progress of the Project's earthwork by conducting regular soil compaction tests at specified intervals. (*Id.* ¶¶ 21-22).  PSI would thus ensure that Hoar and Newell were properly complying with the terms of Hoar's agreement with Plaintiff, which included detailed specifications concerning the earthwork, particularly the type of fill and level of compaction.  (*Id.* ¶ 19, 21).  PSI also agreed to indemnify Plaintiff for any losses suffered because of PSI's failure to perform its obligations under the agreement.  (*Id.* ¶ 26).

Construction on the Project began in 2005. (*Id.* ¶ 28).  Plaintiff alleges that from the start, Newell's earthwork fell "far below the standards required by the Project's specifications." (*Id.*).  More specifically, Plaintiff alleges that Newell regularly used sub-standard fill materials and improperly dumped too much fill between compactions.  (*Id.* ¶ 29).[1]  With respect to PSI, Plaintiff alleges that the geotech was an "active participant" in Newell's misconduct—concealing failing test results from Plaintiff, falsifying positive tests for locations that were never tested, failing to test large portions of the project altogether, allowing Newell to do soil compaction outside of PSI's presence,

---

[1]Plaintiff is pursuing its claims against Hoar and Newell in a parallel arbitration proceeding.  (Pl.'s Am. Compl. ¶ 7).

instructing PSI employees not to report Newell's misconduct to Plaintiff, and allowing subsequent layers of fill to be placed on top of prior layers known by PSI to be failing. (*Id.* ¶ 31). Plaintiff additionally alleges that PSI failed to properly staff the Project in accordance with the terms of its agreement with Plaintiff, and that PSI and its representatives in fact conspired with Newell and its representatives to defraud Plaintiff through the above described conduct. (*Id.* ¶¶ 33, 40-42).

On November 5, 2007, Plaintiff discovered a slope failure at one part of the Project. (*Id.* ¶ 46). Plaintiff alleges that this failure is the result of Newell and PSI's misconduct. (*Id.*). Plaintiff, Hoar, Newell, and PSI settled all disputes concerning that failure in June 2008. (*Id.* ¶ 53). After discovering the first slope failure, however, Plaintiff discovered a number of other slope failures on the project. (*Id.* ¶ 57). These failures are the subject of the instant lawsuit.

Plaintiff instituted the instant action against PSI in state court on June 30, 2010. PSI removed the case to this Court on August 2, 2010 (doc. 1), and then sought a transfer of the case to the Southern District of Alabama (doc. 3). The Court denied this request (doc. 16). In early February 2011, Plaintiff sought (doc. 30) and received (doc. 32) permission to file its First Amended Complaint (doc. 33). In its Amended Complaint, Plaintiff asserts causes of action for RICO violations, RICO conspiracy, fraud, fraudulent suppression, breach of contract, breach of breach of express warranty, breach of implied warranty, negligence, negligent hiring and retention, negligent training, negligent supervision, negligent misrepresentation, and tortious interference with contract, and also requests a declaration as to indemnity. (Pl.'s Am. Compl. ¶¶ 98-134).

On March 10, 2011, Defendant filed a Motion to Dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure (doc. 39). Defendant contends that (1) Plaintiff's common law claims are barred due to the running of the applicable statutes of limitations, (2) Plaintiff's indemnity claim is

redundant of its breach of contract claim, and (3) Plaintiff's RICO claims were improperly plead. Plaintiff responded (doc. 47) on March 31, 2011, and PSI replied (doc. 54) on April 14, 2011.[2]

On May 27, 2011, after the parties' briefing had been ripe for more than a month, Plaintiff filed a Supplement (doc. 58) to its Response opposing dismissal, contending that the Texas statutes of limitations should apply in the instant case, not the Alabama statutes briefed by the parties. Defendant objected that this filing was untimely (doc. 62). While the Court agreed that the Supplement was untimely, the Court found in the interests of judicial economy that the issue should be fully briefed (doc. 65). PSI filed its Response (doc. 69) on July 1.

Within two weeks of the completion of the briefing on the Motion to Dismiss, both parties submitted Motions for Summary Judgment (doc. 73, 81). In its Motion for Summary Judgment, PSI reasserts its statute of limitations arguments, and also raises certain arguments concerning the June 19, 2008 settlement agreement between Plaintiff and PSI and the issue of stigma damages. (*See generally* Def.'s Br. in Supp. of Mot. Summ. J.) The parties' Motions for Summary Judgment will be addressed in a separate Order once the briefing on Plaintiff's Motion is completed.

The briefing on PSI's Motion to Dismiss thus being ripe, the Court now turns to the merits of its decision.

---

[2] Plaintiff also moves to strike (doc. 42) the limitations portion of PSI's Motion to Dismiss. Plaintiff argues that Federal Rule of Procedure 12(g) prohibits successive Rule 12 motions. (Pl.'s Mot. Strike 4-5). PSI correctly points out, however, that more recent case law from the Fifth Circuit and Texas district courts does permit successive Rule 12(b) motions. (*See* Def.'s Resp. to Pl.'s Mot. Strike 4-6 (citing *Nationwide Bi-Weekly Admin., Inc. v. Belo* Corp., 512 F.3d 137, 141 (5th Cir. 2007); *MCW, Inc. v. Badbusinessbureau.com, LLC*, No. 3:02-cv-2727-G, 2004 WL 833595, at *5-6 (N.D. Tex. Apr. 19, 2004); *Stoffels v. SBC Communications, Inc.*, 430 F. Supp. 2d 642, 647-49 (W.D. Tex. 2006). Accordingly, and in light of the fact that PSI has reasserted its same limitations arguments in its Motion for Summary Judgment, Plaintiff's Motion to Strike is hereby **DENIED**.

## II.

## LEGAL STANDARDS

A.      *Rule 12(b)(6) Standard*

Under the Federal Rules of Civil Procedure, a complaint must contain "a short, plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2).  A plaintiff may support her claim for relief with any set of facts consistent with the allegations in the complaint. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 563 (2007).  Rule 12(b)(6) authorizes dismissal of a complaint that fails to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6). In analyzing a Rule 12(b)(6) motion, the Court "accepts 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007)(quoting *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)).  Such a motion should only be granted when the complaint does not include "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.

A claim is plausible on its face  "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).  "The plausibility standard is not akin to a 'probability requirement,' but asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* Thus, to survive a motion to dismiss, "factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.  A complaint that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" will not survive a motion to dismiss. *Iqbal*, 129 S. Ct. at 1949.  A Rule 12(b)(6) motion to dismiss "is viewed with disfavor and is rarely granted." *Harrington v. State Farm Fire & Cas. Co.*, 563 F.3d 141, 147 (5th Cir. 2009).  The

Court's review is limited to the allegations in the complaint and to those documents attached to a defendant's motion to dismiss to the extent that those documents are referred to in the complaint and are central to the claims. *Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004).

B.      *Rule 9(b) Standard*

A dismissal for failure to plead with particularity in accordance with Rule 9(b) is treated as a Rule 12(b)(6) dismissal for failure to state a claim. *Lovelace v. Software Spectrum, Inc.*, 78 F.3d 1015, 1017 (5th Cir. 1996). Rule 9(b) provides, in pertinent part, that, "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." FED. R. CIV. P. 9(b). When claims for fraud and negligent misrepresentation are based on the same set of alleged facts, Rule 9(b)'s heightened pleading standard applies. *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 n.3 (5th Cir. 2010); *see Paul v. Aviva Life & Annuity Co.*, No. 3:09-CV-1490-B, 2010 WL 5105925, at *8 (N.D. Tex. Dec. 14, 2010) (applying 9(b) to fraud and negligent misrepresentation claims that arose out of same set of facts but were contained in separate counts in complaint). The amount of particularity required for pleading fraud differs from case to case. *See Benchmark Elecs., Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 724 (5th Cir. 2003), *modified on other grounds*, 355 F.3d 356 (5th Cir. 2003); *see also Williams v. WMX Techs., Inc.*, 112 F.3d 175, 178 (5th Cir. 1997) (noting that "courts have emphasized that Rule 9(b)'s ultimate meaning is context-specific"). In the Fifth Circuit, the Rule 9(b) standard requires "specificity as to the statements (or omissions) considered to be fraudulent, the speaker, when and why the statements were made, and an explanation of why they were fraudulent." *Plotkin v. IP Axess, Inc.*, 407 F.3d 690, 696 (5th Cir. 2005); *see also Southland Secs. Corp. v. Inspire Ins. Solutions, Inc.*, 365 F.3d 353, 362 (5th Cir. 2004).

- 6 -

In other words, the complaint must provide "the essentials of the first paragraph of any newspaper story, namely the who, what, when, where, and how." *Melder v. Morris*, 27 F.3d 1097, 1100 n.5 (5th Cir. 1994).

## III.

## ANALYSIS

A.    *Plaintiff's State Common Law Claims and Statutes of Limitations*

PSI's first basis for dismissal is that Plaintiff cannot, as a matter of law, succeed on its claims contained in Counts Three through Thirteen (fraud, fraudulent suppression, breach of contract, breach of express warranty, breach of implied warranty, negligence, negligent hiring and retention, negligent training, negligent supervision, negligent misrepresentation, and tortious interference with contract) because the statute of limitations on all of those claims has run under Alabama law.[3] (Defs.' Mot. Dismiss 4-5, 10-13). PSI reasons that the statute of limitations for each of those claims is two years under Alabama law, that this suit was commenced on June 30, 2010, that any injury made the basis of this suit must have therefore occurred after June 30, 2008, and that Counts Three through Thirteen are based on conduct that occurred prior to that date.   (*Id.* at 10-13). Alternatively, PSI contends that even if Texas statutes of limitations apply, Plaintiff nevertheless cannot succeed on Counts Eight through Thirteen because those claims have a two year statute of limitations under Texas law.  (*Id.* at 13-14).   Plaintiff responds that Texas limitations law applies and that the discovery rule precludes PSI's limitations arguments on Counts Eight through Thirteen. (Pl.'s Supplement 1-4; Pl.'s Resp. 7-10, 13-18).

---

[3]Count Fourteen, entitled "Declaration as to Indemnity," is discussed separately below.

The issue of whether Texas or Alabama limitations applies is a pure question of law that is properly subject to Rule 12(b)(6). However, since Plaintiff has invoked the discovery rule, and because Plaintiff's complaint at least plausibly sets out facts where the discovery rule might apply, the Court cannot resolve that issue in the context of PSI's Motion to Dismiss. The parties have fully briefed the discovery rule issue (as well as other equitable defenses to PSI's limitations defense) in their briefing on PSI's Motion for Summary Judgment, and the Court will address those arguments in a separate order. For purposes of this Motion to Dismiss, therefore, the Court only determines whether Texas or Alabama limitations apply.

A court sitting in diversity need not conduct a choice-of-law analysis when there is no conflict of law. *W.R. Grace & Co. v. Cont'l Cas. Co.*, 896 F.2d 865, 874 (5th Cir. 1990). However, if a conflict does exist, a federal district court sitting in diversity must apply its forum state's conflict of laws rules to perform a conflict of laws analysis. *Klaxon Co. v, Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941). The parties agree that there is a conflict in the instant case—the applicable Texas and Alabama statutes of limitations differ—and that Texas conflicts of law rules apply. (*See* Def.'s Mot. Dismiss 4-5; Pl.'s Supplement 3-4).

In Texas, choice of law is initially determined by any contractual agreement between the parties as to which law shall govern. *Maxus Exploration Co. v. Moran Bros., Inc.*, 817 S.W.2d 50, 53 (Tex. 1991). Here, the parties contractually stipulated that the laws of the state of Alabama would govern any dispute arising from the project. (Professional Services Agreement § 15(d), Pl.'s Original Pet. Ex. A). Where the parties have contractually stipulated what state's law should apply, "judicial respect for their choice promotes the policy of protecting their expectations." *DeSantis v. Wackenhut Corp.*, 793 S.W.2d 670, 677 (Tex.1990).

The parties do not dispute that the choice-of-law provision in the Cypress/PSI contract applies in the instant case.  Instead, their dispute centers upon whether the choice-of-law provision applies to not only matters of substantive law, but also procedural law.  Plaintiff contends that while the parties' contractual choice-of-law applies to any substantive matters, Texas courts "uniformly apply Texas law to procedural matters" despite a contractual choice-of-law.  (Pl.'s Supplement 1-2). PSI disagrees, stating that Texas courts instead follow section 187 of the Restatement (Second) of Conflict of Laws, which, when applied in the instant case, would mandate application of the Alabama statute of limitations.  (Def.'s Resp. To Pl.'s Supplement 1-4).

PSI admits that Texas law distinguishes between matters of substantive law versus matters of procedural law.  (*See id.* At 5-6; Def.'s Reply in Supp. of Mot. Summ. J. 2).  While Texas courts typically apply the substantive law of a contractually chosen state, they nevertheless apply Texas procedural law to procedural matters. *Woolley v. Clifford Chance Rogers & Wells*, No. 3:01-CV-2185-D, 2004 WL 57215, at *3-5 (N.D. Tex. Jan. 5, 2004).  Under Texas law, statutes of limitations are considered to be procedural, not substantive. *Johansen v. E.I. Du Pont De Nemours & Co.*, 810 F.2d 1377, 1381 (5th Cir.1987).  PSI contends that the instant case is unique from cases like *Woolley* because the courts in those cases did not deal with a contractual choice of law.  (*See* Def.'s Resp. to Pl.'s Supplement 2-3)**.**  However, this position is contrary to established Texas and Fifth Circuit precedent. *See Long Island Trust Co. v. Dicker*, 659 F.2d 641, 645 (5th Cir. Unit A 1981); *Nexen Inc. v. Gulf Interstate Eng'g Co.*, 224 S.W.3d 412, 417 (Tex. App.—Houston [1st Dist] 2006, no pet) ("Texas courts generally apply Texas procedural law even while applying the parties' contractual choice of law for substantive matters.").  While PSI contends that the *Dicker* case in particular should be ignored due to the fact that it was decided nine years before the Texas Supreme Court's

adoption of section 187 of the Restatement and almost thirty years prior to this suit, PSI has failed to point the Court to any subsequent opinion of a Texas appellate court that would render this holding invalid.  *See Wooley*, 2004 WL 57215, at *3-5 (stating that Texas jurisprudence has not substantially changed since *Dicker* and other Fifth Circuit cases so as to abrogate those cases).

Finally, PSI alternatively contends that the Alabama statutes of limitations should apply in this case is under section 142 of the Restatement (Second) of Conflict of Laws.[4]  (Def.'s Resp. to Pl.'s Supplement 4-7).  PSI contends that section 142 adopts a "most significant-relationship test" that necessitates adoption of the Alabama statutes of limitations.  (*Id.* at 4-5)  Although the Texas Supreme Court has yet to adopt section 142, PSI contends that the Court should find that it would if given the opportunity to do so.  (*Id.* at 5-7).  While PSI cites to several cases from other states where courts have questioned the distinction between "substantive" and "procedural" with statutes of limitations, it has once again failed to point the Court to any cases from Texas that would tend to show that the Texas Supreme Court might hold differently, and the Court similarly refuses to so hold in this case.  *See Wooley*, 2004 WL 57215, at *4 (also refusing to find that the Texas Supreme Court would adopt section 142.

---

[4]PSI offers another alternative argument for the application of the Alabama statutes of limitations in its Reply in support of its Motion for Summary Judgment (doc. 136).  In the interests of judicial economy, the Court addresses that argument, a pure matter of law, in this 12(b)(6) analysis.  PSI argues that the Alabama statutes of limitations that would apply in this case are substantive, not procedural, and thus under Texas conflicts law, the Alabama statutes of limitations should apply.  (Def.'s Reply in Supp. of Mot. Summ. J. 1-4).  PSI is correct that when a the jurisdiction's whose substantive law controls views statutes of limitations as substantive, that jurisdiction's limitations, and not the procedural limitations of the forum state, will apply. *Johansen*, 810 F.2d at 1381.  However, Alabama courts do not agree that statutes of limitations are substantive; instead, they viewing statutes of limitations as procedural as well. *State Farm Mut. Auto Ins. Co. v. Bennett*, 974 So.2d 959, 962 (Ala. 2007) (citing *Etheredge v. Genie Indus., Inc.*, 632 So. 2d 1324, 1326 (Ala. 1994)).

Accordingly, the Court finds that Alabama substantive law and Texas procedural law (including Texas statutes of limitation) govern the instant case. The Court will address the issue of whether Texas statutes of limitations nevertheless preclude Plaintiff's claims in Counts Eight through Thirteen in a separate Order on the parties' Motions for Summary Judgment. Accordingly, PSI's Motion to Dismiss, in so far as it seeks dismissal of Plaintiff's state common law claims, is hereby **DENIED**.

> B.      *Plaintiff's Indemnity Claim*

PSI next moves to dismiss Plaintiff's request for a "Declaration as to Indemnity" (Count Fourteen), contending that it is redundant of Plaintiff's breach of contract claim and that it fails to state a cause of action. (Def.'s Mot. Dismiss 17-18). Plaintiff does not address PSI's contentions in its Response.

The Court has broad discretion in determining whether to entertain a declaratory judgment action. *Wilton v. Seven Falls Co.*, 515 U.S. 277, 287 (1995). If a request for a declaratory judgment adds nothing to an existing lawsuit, it need not be permitted. *See Mandry v. Fina Oil & Chemical Co.*, No. 94-10509, 1994 WL 733494, at *2 (5th Cir. 1994) (reversing award of declaratory relief where "[t]he declaratory judgment does not declare any significant rights not already at issue in the contract dispute."); *Landscape Design and Constr., Inc. v. Transport Leasing/Contract, Inc.*, No. 3:00-cv-906-D, 2002 WL 257573, at *10 (N.D. Tex. Feb. 19, 2002) (dismissing declaratory judgment action as redundant where contract interpretation issue would be resolved as part of breach of contract action); *Liberty Mutual v. Hisaw & Assocs. Gen. Contractors*, No. 3:09-cv-867, 2010 WL 4340692, at * 12 (N.D. Tex. Oct. 25, 2010) (holding same, in particular context of alleged breach of an indemnity agreement).

- 11 -

In Count Five of its Amended Complaint, entitled "Breach of Contract," Plaintiff alleges that "PSI materially breached the Cypress/PSI Contract in several respects," including "failing to reimburse [Plaintiff] for the dames arising out of PSI's failure to properly and adequately perform the services set forth in the Cypress/PSI Contract." (Pl.'s 1st Am. Compl. ¶¶ 107-08). This claim directly implicates the same indemnity provision of the Cypress/PSI contract upon which Plaintiff seeks its declaration as to indemnity. (*See id.* § 132-33). Because resolution of Plaintiff's breach of contract claim will necessarily also resolve its declaratory judgement claim, the latter claim is duplicative and unnecessary. *See Mandry*, 1994 WL 733494 at *2. Accordingly, PSI's Motion to Dismiss, to the extent it seeks dismissal of Plaintiff's request for a Declaration as to Indemnity, is **GRANTED**. The Court notes, however, that its ruling in no way intimates a finding or determination as to the validity of any claim for indemnity arising under the contract. The Court thus expressly refuses to address PSI's alternative contention that the indemnity provision in the Cypress/PSI contract has not been triggered in the instant case. (*See* Def.'s Mot. Dismiss 18).

C.      *Plaintiff's RICO Claims*

Plaintiff alleges that PSI and Newell, together with their employees, created a RICO "enterprise," through which they engaged in and conspired to engage in a pattern of racketeering activity in violation of the RICO statute, 18 U.S.C. §§ 1962(c) and (d). (*See* Pl.'s Am. Compl. ¶¶ 76-97). "Subsection 1962(c) prohibits persons employed by or associated with any enterprise from conducting or participating in the enterprise's affairs through a pattern of racketeering." *Word of Faith World Outreach Center Church, Inc. v. Sawyer*, 90 F.3d 118, 121 (5th Cir. 1996). "Subsection 1962(d) prohibits a conspiracy to violate 18 U.S.C. § 1962(a), (b), or (c)." *Id.* at 122.

To state a plausible RICO claim, Plaintiff must allege facts to show "(1) a person who engages in (2) a pattern of racketeering activity, (3) connected to the acquisition, establishment, conduct, or control of an enterprise." *In re Burzynski*, 989 F.2d 733, 741-42 (5th Cir. 1993).   A RICO "person" may be "any individual or entity capable of holding a legal or beneficial interest in property." 18 U.S.C. § 1961(3); *St. Paul Mercury Ins. Co. v. Williamson*, 224 F.3d 425, 439 (5th Cir. 2000).  "Racketeering activity" includes certain state and federal offenses enumerated in § 1961(1), including mail or wire fraud.  *H.J. Inc. v. Nw. Bell Tell. Co.*, 492 U.S. 229, 239 (1989); *Word of Faith*, 90 F.3d at 122.  To assert a claim based on a "pattern of racketeering activity, Plaintiffs must allege "that the racketeering predicates are related and that they amount to or pose a threat of continued criminal activity." *Word of Faith*, 90 F.3d at 122 (quoting *H.J. Inc.*, 492 U.S. at 239).  An "enterprise" is broadly defined by the Act, and it "can be either a legal entity or an association-in-fact." *St. Paul Mercury Ins. Co.*, 224 F.3d at 440.  However, a RICO person must be distinct from the RICO enterprise.  *Abraham v. Singh*, 480 F.3d 351, 357 (5th Cir. 2007).

PSI moves to dismiss Plaintiff's RICO and RICO conspiracy claims on several grounds: (1) that "Plaintiff has failed to sufficiently plead the predicate acts of fraud" under the heightened pleading standard of Rule 9(b); (2) that "Plaintiff has failed to allege facts which demonstrate a pattern of racketeering activity;" (3) that "Plaintiff has failed to allege facts which demonstrate an association-in-fact; (4) that "Plaintiff has failed to allege an entity separate and apart from the pattern of activity in which it engaged; (5) that "Plaintiff has failed to plead facts of causation which demonstrate it has standing to maintain its RICO causes of action;" and (6) that "Plaintiff has not pleaded a § 1962(c) cause of action and, therefore, cannot maintain a 1962(d) violation."  The Court examines each contention in turn.

- 13 -

i.      Predicate Acts of Fraud

Plaintiff alleges that PSI engaged in mail and wire fraud when it knowingly sent Plaintiff its fraudulent reports and summaries concerning Newell's earthwork on the projects via fax and email. (Pl.'s 1st Am. Compl. ¶¶ 62-68).  PSI contends that Plaintiff has inadequately plead these predicate acts under Rule 9(b) of the Federal Rules of Civil Procedure.  (Defs.' Mot. Dismiss 23-24).

Rule 9(b) provides "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity."  Fed. R. Civ. P. 9(b); *Coates v. Heartland Wireless Comms., Inc.*, 26 F.Supp.2d 910, 914 (N.D. Tex. 1998).  Because "Rule 9(b)'s particularity requirement applies to pleading fraud as a predicate act in a RICO claim, Plaintiff must meet the heightened standard of pleading when alleging these fraud-based predicate acts.  *Bonton v. Archer Chrysler Plymouth, Inc.*, 889 F. Supp. 995, 1004 (S.D. Tex. 1995) (citing *Tel-Phonic Servs.*, 975 F.2d at 1138)).  "To satisfy Rule 9(b), a plaintiff must at a minimum allege the 'time, place, and contents of the false representations, as well as the identity of the person making the misrepresentations and what he obtained thereby.'"  *Bonton*, 889 F. Supp. at 1004 (quoting *Tel-Phonic Servs.*, 975 F.2d at 1139)).

Though this burden requires specificity, a "complainant need not, however, state all facts pertinent to a case to satisfy the requirements of Rule 9(b)."  *Mitchell Energy Corp. v. Martin*, 616 F.Supp. 924, 927 (S.D. Tex. 1985).  "Rule 9(b) does not 'reflect a subscription to fact pleading' and requires only 'simple, concise, and direct' allegations of the 'circumstances constituting fraud,' which after *Twombly* must make relief plausible, not merely conceivable, when taken as true."  *United States v. Kanneganti*, 565 F.3d 180, 186 (5th Cir. 2009) (quoting *Williams v. WMX Techs., Inc.*, 112 F.3d 175, 178 (5th Cir. 1997)).  In alleging a RICO scheme involving mail or wire fraud, it is not

necessary to assert that each defendant personally made fraudulent mailings or wires; rather "Rule 9(b) requires that the plaintiff allege facts specifying each defendant's contribution to the fraud." *At the Airport v. ISATA*, 438 F. Supp. 2d 55, 61 (E.D.N.Y. 2006). Where a "plaintiff claims that mail and wire fraud were in furtherance of a larger scheme to defraud . . . Rule 9(b) 'only requires the plaintiff to delineate, with adequate particularity, the specific circumstances constituting the overall fraudulent scheme.'" *Id.*

PSI contends that Plaintiff has failed to satisfy the particularity requirements of Rule 9(b) because Plaintiff has failed to identify any specific reports, summaries, or other documents sent through the mail or by wire for purposes of furthering a fraudulent scheme. (Def.'s Mot. Dismiss 24). PSI also contends that Plaintiff has failed to allege that any mailing or wiring of any document was made for the purpose of executing the scheme, instead of merely to comply with the requirements of the parties' contract. (*Id.*). Plaintiff does not directly respond to these arguments in its Response. (*See* Pl.'s Resp. 20-24).

The Court is unconvinced by PSI's arguments. The inquiry into whether a plaintiff has plead its fraud claims with particularity is necessarily case-specific. *Guidry v. Bank of LaPlace*, 954 F.2d 278, 288 (5th Ci. 1992). In considering whether a party's fraud claims satisfy the requirements of Rule 9(b), the "focal point" of a court's inquiry is whether the pleading satisfies the purposes of the Rule. *Mitchell Energy*, 616 F. Supp. at 927 (quoting *In re Commonwealth/Tesoro Petroleum Corp. Securities Litigation*, 467 F. Supp. 227, 250 (W.D. Tex. 1979)). "Rule 9(b) serves three purposes: [f]irst, the Rule ensures that defendants receive fair notice of the plaintiffs' claims; second, it protects the defendants' reputations from unfounded allegations of improper conduct, and third, the Rules helps prevent the institution of strike suits." *In re Urcarco Securities Litigation*, 148 F.R.D. 561, 564

(N.D. Tex. 1993); *see Mitchell Energy*, 616 F. Supp. at 927 (listing the same general purposes, though in place of "strike suits" providing that Rule 9(b) seeks to preclude plaintiffs from bringing suit as a "pretext for discovery" in order to discover whether any fraudulent acts have occurred).

In the instant case, the court finds that the mail and wire fraud scheme alleged by Plaintiff satisfies the purposes of Rule 9(b). Plaintiff's claims are not a "pretext for discovery," a "strike suit,"[5] or an attempt to improperly impugn PSI's reputation. Instead, Plaitniff's allegations serve to adequately notify PSI of the nature of Plaintiff's claims. Plaintiff specifies the peiod of time during which the alleged frauds were perpetrated (from the date of the PSI's first report—since Newell performed inadequately "[f]rom the start"—to at least PSI's June 17, 2009 Report), the location (Spanish Fort, Alabama), the nature of the fraud (mailing and emailing of false reports that concealed the poor performance of PSI and Newell), how the participants profited from the RICO conspiracy (payment of funds for services that were never rendered or that were rendered deficiently, as well as kickbacks to participating employees), and the parties involved in the fraud (PSI, Newell, and their employees). *See Bonton*, 889 F. Supp. at 1004; *Mitchell Energy*, 616 F. Supp. At 927-28 (conducting a nearly identical analysis in finding requirements of Rule 9(b) satisfied).

In the instant case, the Court therefore finds that Plaintiff has sufficiently plead the predicate acts of the faxing and emailing of PSI's reports, summaries, and invoices with particularity. PSI's contention that Plaintiff has only alleged that the predicate acts were taken to comply with the Cypress/PSI contract, not to further the enterprise, is unfounded. Plaintiff specifically alleges that

---

[5]Strike suits are generally actions taken for the purpose of "last[ing] long enough to take enough discovery to learn a few facts that can be tortured into surviving summary judgment and then . . . extort[ing] a settlement with the threat that trying the cases poses a danger to the existence of the company." *King v. Douglas*, 973 F. Supp. 707, 719 (S.D. Tex. 1996).

- 16 -

"[t]he object of the RICO Enterprise, and the purpose for which it was formed, was to conceal from [Plaintiff] the defects specifically identified by Terracon, the fraudulent compaction test recording noted by KPMG, and Newell's shoddy earthwork construction." (Pl.'s 1st Am. Compl. ¶ 62). Nor is PSI's argument that Plaintiff must point to the specific fraudulent reports apt in the present case, since Plaintiff alleges that the earthwork on the project was wholly deficient "[f]rom the start," that PSI's reports did not indicate any deficiencies on the project, and that certain employees knew these reports were fraudulent, yet were either bribed or intimidated into remaining silent.

Accordingly, PSI's Motion to Dismiss, in so far as it is premised on the inadequacy of Plaintiff's predicate act allegations, is **DENIED**.

ii.     Pattern of Racketeering Activity

In addition to sufficient pleading of predicate acts, to satisfy the second RICO element Plaintiffs must allege a "pattern" of such acts. *In re Burzynski*, 989 F.2d at 742. "'Racketeering activity' consists of two or more predicate offenses, defined by the statute to include acts violating federal wire or mail fraud statutes." *Word of Faith*, 90 F.3d at 122 (quoting 18 U.S.C. § 1961). This two-pronged element "requires the plaintiff to plead both that the predicate acts are related to each other and that they either constitute or threaten long-term criminal activity." *In re Burzynski*, 989 F.2d at 742 (quoting *H.J. Inc.*, 492 U.S. at 239). It is this factor of *continuity plus relationship* which combines to produce a pattern." *H.J. Inc.*, 492 U.S. at 239 (emphasis in original).

Predicate acts are related where the acts "have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and not isolated events." *Id.*; *Word of Faith*, 90 F.3d at 122. Additionally, for a series of related predicate acts to constitute a RICO "pattern of activity," Plaintiffs must also allege that

- 17 -

the conduct was sufficiently continuous.   "It is 'continuity' that assures a federal cause of action."
*In re Burzynski*, 989 F.2d at 742.  Continuity may be alleged as "either a closed period of repeated
conduct, or an open-ended period of conduct that, 'by its nature projects into the future with a
threat of repetition.'" *Word of Faith*, 90 F.3d at 122 (quoting *H.J. Inc.*, 492 U.S. at 240).  A closed
period of conduct may be properly pleaded by alleging "a series of related predicates extending over
a substantial period of time."  *Id.* (citing *H.J. Inc.*, 492 U.S. at 241).  An open period of conduct
requires allegations of "a specific threat of repetition extending indefinitely into the future," or that
"the predicates are a regular way of conducting defendant's ongoing legitimate business."  *Id.* (citing
*H.J. Inc.*, 492 U.S. at 242-43).

         PSI contends that activities occuring over the course of a single construction project cannot
raise to the level of a "pattern" of racketeering activity.  (Def.'s Mot. Dismiss 22).  Specifically, PSI
argues that the Amended Complaint fails to allege how long, how often, or the number of times the
predicate acts occurred so as to determine whether a "pattern" existed.  PSI also once again points
out that Plaintiff does not point to any particular documents it alleges were fraudulent.  Once again,
Plaintiff does not directly respond to these contentions.

         The Court disagrees.  In order to establish a pattern of racketeering activity, a plaintiff need
not demonstrate multiple schemes.  *Proctor & Gamble Co. v. Big Apple Indus. Bldgs., Inc.*, 879 F.2d
10, 16 (2d Cir. 1989).  "Congress did not mean 'to exclude from the reach of RICO multiple acts of
racketeering simply because they achieve their objective quickly or because they further but a single
scheme."  *Id.* (quoting *United States v. Indelicato*, 865 F.2d 1370, 1383 (2d Cir. 1989)).  Instead,
continuity can be established "in various ways," including the nature of an enterprise or "the sheer
number of predicate acts over several years."  *Id.*

- 18 -

In the instant case, Plaintiff alleges that Newell's earthwork was deficient "[f]rom the start," yet PSI nevertheless represented to Plaintiff by means of its reports, summaries, and invoices that the work was acceptable.  Plaintiff alleges that PSI willfully emailed or faxed these false reports, summaries, and invoices, bribed employees to remain silent on the known defects on the project, and intimidated other employees to prevent the revelation of their misdeeds.  These related acts formed a pattern over the course of the Project, which sufficiently satisfies the RICO Statute.

Accordingly, the Court finds Plaintiff has adequately plead the existence of a pattern of racketeering activity, and PSI's Motion to Dismiss is **DENIED**.

### iii.   Existence of an Association-in-Fact.

PSI next argues that Plaintiff has not alleged sufficient facts demonstrating the existence of an association-in-fact.  (Def.'s Mot. Dismiss 19-20).  In order to succeed on a RICO claim, a plaintiff must be able to prove the existence of an "enterprise."  *See In re Burzynski*, 989 F.2d 733, 741-42 (5th Cir. 1993).  "Congress gave the term 'enterprise' a very broad meaning."  *United States v. Elliott*, 571 F.2d 880, 897 (5th Cir. 1978) (quoting *United States v. Hawes* 529 F.2d 472, 479 (5th Cir. 1976)).  Under the statute, "'enterprise' includes any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity."  18 U.S.C. § 1961(4).  A "RICO enterprise can be either a legal entity or an association-in-fact."  *St. Paul Mercury Ins. Co.*, 224 F.3d at 440.  "If the alleged enterprise is an association-in-fact, the plaintiff must show evidence of an ongoing organization, formal or informal, that functions as a continuing unit over time through a hierarchical or consensual decision-making structure."  *Id.*

PSI contends that Plaintiff has failed to plead the existence of an association-in-fact because it has failed to set forth facts that demonstrate the association-in-fact was either ongoing or

functioned for a particular period of time.   (Def.'s Mot. Dismiss 19-20).   However, Plaintiff's Amended Complaint is clear that Newell's earthwork was knowingly defective "[f]rom the start," that PSI's reports never revealed these deficiencies, and that Newell and PSI further conspired to conceal and cover-up these facts from Plaintiff throughout the course of the Project.   Accordingly, PSI's Motion to Dismiss in this respect is **DENIED**.

iv.   <u>An Enterprise Distinct from the Pattern of Activity</u>

PSI also argues that the alleged Enterprise is not distinct from the alleged racketeering activities.   (Def.'s Mot. Dismiss 18-19).   A RICO enterprise must be "an entity separate and apart from the pattern of activity in which it engages."   *Atkinson v. Anadarko Bank & Trust Co.*, 808 F.2d 438, 441 (quoting *United States v. Turkette,* 452 U.S. 576, 583 (1981)).   The Court concludes that Plaintiff has alleged the necessary distinctions.   Plaintiff does not allege that the enterprise existed solely for the purpose of executing the allegedly fraudulent predicate acts.   Indeed, PSI itself even argues that a purpose of their relationship was to at least partially perform their respective responsibilities under the construction and engineering agreements.   (*See* Def.'s Mot. Dismiss 24).   Thus, Plaintiff has alleged the existence of an enterprise distinct from the pattern of racketeering activity in which it engaged,, and the Court **DENIES** Defendants' Motion to Dismiss Plaintiff's RICO claims on that basis.

v.   <u>Causation</u>

PSI next moves to dismiss Plaintiff's RICO claims on the grounds that Plaintiff has failed to prove that PSI's RICO activity caused Plaintiff's harm.   (Def.'s Mot. Dismiss 20-22).   Instead, Defendant argues that Plaintiff has alleged a host of other causes of this harm.   (*Id.* at 21).   The Court once again disagrees.   In examining a motion to dismiss under Rule 12(b)(6), a party need

only allege sufficient facts to created a plausible claim upon which relief might be granted. *See Twombly*, 550 U.S. at 570. Here, the Court concludes that when all of Plaintiff's allegations as a whole are taken as true, the pattern of activity in which the Enterprise engaged surely could have been a cause of the slope failures and resultant harm—had Newell and PSI not conspired and acted to conceal Newell's ongoing earthwork, one could plausibly assume that some of the resultant slope failures on the Project either would not have occurred at all or at least not to the extent they ultimately have. Accordingly, the Court **DENIES** PSI's Motion to Dismiss in this respect as well.

<u>vi.</u>   <u>Conspiracy Claim</u>

Finally, PSI argues that Plaintiff's RICO conspiracy claim (Count 2) should be dismissed as well. (Def.'s Mot. Dismiss 25). However, PSI's only proffered basis for dismissal of this claim is premised upon its arguments that the underlying RICO claim has failed as well. (*See id.*). Because the Court has found Plaintiff's § 1962(c) claim to be adequately plead, PSI's argument regarding the § 1962(d) claim is not well-taken, and PSI's Motion to Dismiss with respect to that claim is **DENIED**.

## IV.

## CONCLUSION

Based on the foregoing, the Court **GRANTS** PSI's Motion to Dismiss to the extent it seeks dismissal of Plaintiff's request for a "Declaration as to Indemnity," **DENIES** PSI's Motion to Dismiss to the extent it seeks dismissal of Plaintiff' state common law claims on limitations grounds and Plaintiff's RICO claims, and **DENIES** Plaintiff's Motion to Strike the Motion to Dismiss. Accordingly, Count Fourteen of Plaintiff's Amended Complaint, entitled "Declaration as to Indemnity," is hereby **DISMISSED**. Because the Court finds that further amendment of that claim

would be futile, such dismissal is **with prejudice**.  *See McGowan v. Faulkner Concrete Pipe Co.*, 659

F.2d 554, 556 (5th Cir. 1981) ("Where further litigation on the claim will be time-barred, a dismissal

without prejudice is no less severe a sanction than a dismissal with prejudice, and the same standard

of review is used.").


     SO ORDERED.

     DATED August 29, 2011

_____
JANE J. BOYLE
UNITED STATES DISTRICT JUDGE